USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/29/16

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NICHOLAS HERRARA, et al.,                  :
                                            :
                          Plaintiffs,        :
                                            :
            - against -                      :
                                            :
12 WATER STREET GOURMET CAFÉ, LTD, et al.,   :
                                            :
                          Defendant.         :

**REPORT AND
RECOMMENDATION**

**13-CV-4370 (JMF)(RLE)**

**To the HONORABLE JESSE M. FURMAN, U.S.D.J.:**

## I. INTRODUCTION

Plaintiffs Nicolas Herrara, Miguel Peralta, and Victor Xochimitl commenced this action against Defendants Water St. Gourmet, Inc. ("Gourmet, Inc."), Yassin Zacki, Abdo Zindani, Mohsin Zindani, and Mohamed Alzandani, alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), the Portal-to-Portal Act, 29 U.S.C. § 255a, and New York Labor Law ("NYLL") § 663. (Doc. No 1.) On January 17, 2014, the Honorable Jesse M. Furman entered default judgment against Defendant Yassin Zaki. (Doc. No. 46.) On January 29, 2014, the Court entered default judgment against Defendant Gourmet, Inc., and referred the case to the undersigned for an inquest on damages, costs, and reasonable attorneys' fees. (Doc. No. 48-49.) On July 16, 2014, the Court entered default judgment against Defendants Abdo Zindani ("Abdo"), Mohsin Zindani ("Mohsin"), and Mohamed Alzandani, and again referred the case to the undersigned for inquest. (Doc. No. 90.)

For the reasons that follow, I recommend that the Court enter judgment for Plaintiffs in the amount of **$689,168.65**.

## II. BACKGROUND

### A.     Factual Background

#### 1.        Complaint

Where a court determines that a defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, must be taken as true. *Li Ping Fu v. Pop Art Int'l Inc.*, No. 10-CV-8562 (DLC)(AJP), 2011 WL 4552436, at *1 (S.D.N.Y. Sept. 19, 2011). The Complaint alleges the following:

Gourmet, Inc. is a New York café and deli located at 12 Water Street, New York, New York. (Doc. No. 77.) Zaki is the Chief Executive Officer of Gourmet, Inc. and Abdo, Mohsin, and Alzandani are officers. (*Id.*)

Herrara, Peralta, and Xochimitl, all New York residents, were cooks for Gourmet, Inc., employed on an hourly basis. (*Id.*) During their employment, Plaintiffs routinely worked more than ten hours per day and more than forty (40) hours per week. (*Id.* at 4.) From 1994 until 2012, Herrara worked approximately six eleven-hour days per week, resulting in a sixty-six hour workweek, every week. (*Id.*) From 1999 to 2012, Peralta worked approximately six ten-hour days per week, resulting in a sixty-hour workweek, every week. From 2003 to 2012, Xochimitl worked approximately six nine-hour days per week resulting in a fifty-four hour workweek, every week. (*Id.*)

Despite their extended hours, Plaintiffs were paid for 40 hours of each workweek during their respective periods of employment. (*Id.*) Defendants failed to pay Plaintiffs overtime compensation as required by the FLSA and the NYLL, and failed to pay Plaintiffs "spread of hours" pay as required by the NYLL. (*Id.*) Plaintiffs seek: 1) unpaid wages in the form of

2

monetary damages; 2) liquidated damages for Defendants' willful violations of the FLSA and the NYLL; 3) prejudgment interest; and 4) costs, expenses and reasonable attorneys' fees associated with this action. (*Id.*)

### 2. Inquest Submissions

In support of inquest damages, Plaintiffs filed affidavits from Herrara, Peralta, and Xochimitl, as well as charts outlining the hours each Plaintiff worked and the damages sought. (Doc. No. 71, Ex. 2-7.) In support of their request for reasonable attorneys' fees and costs, Plaintiffs filed the declarations of counsel Scott Korenbaum, David Rankin, and Mark Taylor as well as contemporaneous time records. (Doc. No 71; Doc. No. 71, Ex. 9-10; Doc. No. 72.)

Herrara claims that Gourmet, Inc. owes him a total of $334,995.52: $91,884.38 in unpaid overtime under the FLSA, $111,324.38 in unpaid overtime under the NYLL, $12,071.30 in unpaid spread of hours pay under the NYLL, $91,884.38 in liquidated damages under the FLSA, and $27,831.09 in liquidated damages under the NYLL. (Doc. No. 71-3.) He alleges that from July 1, 2002, to July 1, 2008, he was paid $600 per week, and from July 1, 2008, to October 2012, he was paid $750 per week. (Doc. No. 71-2.)

Peralta claims that Gourmet, Inc. owes him a total of $208,843.60: $57,873.75 in unpaid overtime under the FLSA, $74,476.88 in unpaid overtime under the NYLL, $12,071.30 in spread of hours pay under the NYLL, $57,873.75 in liquidated damages under the FLSA, and $18,619.22 in liquidated damages under the NYLL. (Doc. No. 71-5.) He alleges that from 2002 to October 28, 2012, he was paid $575 per week. (Doc. No. 71-4.)

Xochimitl claims that Gourmet, Inc. owes him a total of $147,301.90: $42,052.50 in unpaid overtime under the FLSA, $50,557.50 in unpaid overtime under the NYLL, $42,052.50 in

liquidated damages under the FLSA, and $12,639.38 in liquidated damages under the NYLL. (Doc. No. 71-7.) He alleges that from August 1, 2003, to May 1, 2005, he was paid $500 per week; from May 1, 2005, to October 1, 2008, he was paid $600 per week; from October 1, 2008, to October 1, 2010, he was paid $630 per week; and from October 1, 2010, to October 28, 2012, he was paid $660 per week. (Doc. No. 71-6.)

Defendants did not submit any opposition papers.

**B.    Procedural Background**

On June 24, 2013, Plaintiffs filed a Complaint against 12 Water St. Gourmet Café, Ltd ("12 Water St."), and Martin Mack as a collective action. (Doc. No. 1.) On July 19 2013, Plaintiffs filed a "Motion for Discovery before the Initial Rule 16 Conference." (Doc. No. 4.) On July 26, 2013, Judge Furman issued an Order stating that there were no indications on the docket that Plaintiffs had either served the motion or the Complaint on Defendants. (Doc. No. 8.) The Court ordered Plaintiffs to: 1) promptly file proof of service; 2) serve a copy of the Court's July 26 Order on Defendants no later than July 29, 2013, and file proof of such service; or, alternatively 3) serve Defendants if they had not yet done so and file proof of service by July 29, 2013. (*Id.*) On July 26, 2013, Plaintiffs filed Affidavits of Service indicating that they had served Defendants with the Court's prior Orders as well as the Complaint. (Doc. Nos. 9-12.) On August 12, 2013, the Court granted Plaintiffs' motion for expedited discovery, noting that Defendants had not filed an opposition. (Doc. No. 13.)

On August 21, 2013, the Court received a letter from attorney C.K. Lee stating that the Lee Litigation Group had recently been retained as counsel to Defendants and asking that discovery be stayed while counsel investigated Plaintiffs' claims and moved to dismiss. (Doc.

No. 14.) The Court denied counsel's application. (*Id.*) C.K. Lee filed a notice of appearance on behalf of Defendants on August 29, 2015, and asked the Court to adjourn the initial conference scheduled for September 25, 2013. (Doc. No. 15-16.) The Court rescheduled the conference to October 3, 2013. (Doc. No. 16.) On September 6, 2013, counsel for Defendants contacted the Court seeking "guidance as to whether the Court [would] permit Defendants to seek dismissal of the Complaint because they never employed the Plaintiffs and thus, are not proper parties to the Action." (Doc. No. 17 at 1.) Counsel further argued that it would be premature for the Parties to enter into a case management plan. (*Id.*) The Court denied Defendants' request and informed the Parties that the issues raised would be addressed at the October 3 conference. (*Id.*)

On September 19, 2013, Plaintiffs filed an Amended Complaint against 12 Water St., newly-named Water St. Gourmet Inc. ("Gourmet, Inc."), Yassin Zaki, and "John Does 1-3." (Doc. No. 18.) Plaintiffs filed Affidavits of Service indicating the Amended Complaint had been served on Water St. Gourmet, Inc. and 12 Water Street Gourmet Café, Ltd. (Doc. No. 19-20.) On September 27, 2013, Plaintiffs asked the Court to adjourn the October 3 conference because they had not yet heard from Gourmet, Inc., and had not been able to effectuate service on Zaki, the CEO of Water St. (Doc. No. 21.) That same day, counsel for 12 Water St. informed the Court that, although his client joined in the request for an adjournment, counsel had been informed by Plaintiffs that they would be dismissing 12 Water St. from the action because it had been a defunct corporation since 2004 and had been wrongly named. (Doc. No. 22.)

On September 30, 2013, 12 Water St. moved for sanctions against Plaintiffs and Plaintiffs' counsel, alleging that Plaintiffs' inclusion of 12 Water St. as a defendant in the Amended Complaint was frivolous and designed to create unnecessary delay and litigation costs.

5

(Doc. No. 23.)  The Court granted the Parties' adjournment request and rescheduled the initial conference for November 6, 2013.  (Doc. No. 26.)  On October 8, 2013, Plaintiffs filed a Notice of Voluntary Dismissal, removing Defendant 12 Water St. from the case.  (Doc. No. 29.)  After Plaintiffs filed an opposition to 12 Water St.'s motion for sanctions, the Court denied the motion "substantially for the reasons stated in Plaintiffs' Memorandum."  (Doc. No. 33.)

On October 31, 2013, Plaintiffs filed a third letter request for an adjournment of the initial conference, explaining that in light of Gourmet, Inc.'s failure to appear in the case and the effectuation of service on Zaki the day before, Plaintiffs would not have an opportunity to confer with opposing counsel on a case management plan before the conference.  (Doc. No. 34.)  The Court granted Plaintiffs' request and rescheduled the initial conference for December 4, 2013. Plaintiffs filed an Affidavit of Service for Zaki on November 5, 2013.  (Doc. No. 36.)  On November 26, 2013, Plaintiffs filed a status report in lieu of a proposed case management plan, informing the Court that despite serving Gourmet, Inc. and Zaki, and despite informing Zaki on November 22, 2013, by certified mail that he was in default, Plaintiffs had not been contacted by Defendants.  (Doc. No. 37.)

On November 26, 2013, the Court: 1) cancelled the initial conference; 2) ordered Defendants to show cause for their failure to answer the Complaint or otherwise appear in this action by December 9, 2013; and 3) scheduled a "show cause" hearing for January 3, 2014. (Doc. No. 38.)  Because of inclement weather, the hearing was rescheduled for January 17, 2013. (Doc. No. 44.)  The Clerk of the Court issued a Certificate of Default as to Zaki and Gourmet, Inc. on December 9, 2013.  (Doc. No. 39.)  Plaintiffs filed a Declaration in Support of the Order to Show Cause on December 10, 2013.  (Doc. No. 41.)  After Defendants failed to appear at the

January 17 conference, the Court granted judgment in favor of Plaintiffs against Defendants Zaki

and Gourmet, Inc. (Doc. No. 46, 48.) The case was referred to the undersigned for Inquest on

January 29, 2014.

On February 13, 2014, the Court held a telephone conference to discuss the Inquest.

Defendants did not appear. On February 14, 2014, the Court ordered Plaintiffs to file

submissions in support of damages by March 28, 2014, Defendants to submit their opposition by

April 4, 2014, and Plaintiffs to submit their reply by April 4, 2014. (Doc. No. 53.) On March 5,

2014, Plaintiffs asked for an extension of time to file their supporting documentation, and

informed the Court that "at least one of the defendants in this action [were] contemplating filing

for bankruptcy protection," which could result in a stay of the proceedings. (Doc. No. 60.) The

Court granted Plaintiffs' request on March 6, 2014. (Doc. No. 61.) Thereafter, Plaintiffs made

two additional requests for extensions, which the Court granted. (Doc. Nos. 64, 66.) On April 1,

2014, Plaintiffs filed declarations and memoranda in support of damages. (Doc. No. 71-73.)

On April 7, 2014, Judge Furman ordered Plaintiffs to submit a written explanation for

their failure to serve the John Doe Defendants or, alternatively, to describe when and in what

manner service had been made. (Doc. No. 74.) By letter dated April 8, 2014, Plaintiffs asked

the Court for leave to file a Second Amended Complaint naming the John Doe Defendants.

(Doc. No. 75.) The Court granted the motion, and Plaintiffs filed the Second Amended

Complaint naming Mohsin Zindani ("Mohsin"), Mohamed Alzandani ("Alzandani"), and Abdo

Zindani ("Abdo") ("the Individual Defendants") as Defendants on April 9, 2014. (Doc. No. 76-

77.) The Individual Defendants were served on April 29, April 30, and May 27, 2014, and their

Answers were due on May 20, May 21, and June 18, 2014, respectively.  (Doc. Nos. 82-84.)  No Answers were filed.

On June 17, 2014, the Clerk of the Court issued a Certificate of Default as to Mohsin, Alzandani, and Abdo.  (Doc. No. 85.)  On June 18, 2014, Judge Furman: 1) ordered the Individual Defendants to show cause why an Order should not be issued granting Plaintiffs' motion for a default judgment, and joining any inquest granted against the Individual Defendants with the inquest proceedings pertaining to Defendants Gourmet, Inc. and Zacki; 2) scheduled a "show cause" hearing for July 8, 2014; and 3) cancelled the initial conference.  (Doc. No. 86.)

Plaintiffs filed a Declaration in Support of the Order to Show Cause on June 19, 2014. (Doc. No. 87.)  On July 16, 2014, Judge Furman entered default judgment against the Individual Defendants and referred the calculation of damages, costs, and fees to the undersigned as a part of the earlier inquest.  (Doc. No. 90.)

### III.  DISCUSSION

**A.      Applicable Law**

**1.       Standard for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure requires that a court enter default judgment against a party who has "failed to plead or otherwise defend." FED. R. CIV. P. 55(a). After default judgment, a court accepts factual allegations as true, except those relating to damages. *Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993).  While a court usually conducts an inquest hearing to determine damages, a hearing is not necessary where extensive documentary evidence is available. FED. R. CIV. P. 55(b)(2); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp. Div of Ace Young Inc.*, 109 F.3d 105 (2d Cir. 1997).  A court should take any necessary

steps to establish damages with reasonable certainty. *Id.* at 111. The damages awarded must not "differ in kind from" what the plaintiff demands in the pleadings. FED. R. CIV. P. 54(c); *see also Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007).

Here, the Court ordered default judgment after Defendants failed to retain counsel and appear before the Court. Defendants further failed to appear at a telephone conference to discuss damages, and did not provide any documentary evidence regarding damages. Plaintiffs have submitted sufficient documentary evidence to allow for a computation of damages. Plaintiffs seek a total of $712,424.14 in damages[1] and $44,036.13 in attorneys' fees and costs. (Doc. No. 39 at 4.)

### 2.    Statute of Limitations

The applicable statutes of limitations are six years under the NYLL, two years under the FLSA for standard violations, and three years under the FLSA for "willful" violations. *See* NYLL § 663(3); 29 U.S.C. § 255(a); N.Y. C.P.L.R. § 213(2). The Complaint alleges that the acts of Defendants were willful. The Court accepts this allegation as true given Defendants' default. *See, e.g., Angamarca v. Pita Grill 7 Inc.*, No. 11-CV-7777 (JGK)(JLC), 2012 WL 3578781, at \*4 (S.D.N.Y. Aug. 2, 2012); *Maldonado v. La Nueva Rampa, Inc.*, No. 10-CV-8195 (LLS)(JLC), 2012 WL 1669341, at \*3 (S.D.N.Y. May 14, 2012); *Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2022644, at \*3 (S.D.N.Y. May 2, 2011), *adopted by Wicaksono v. XYZ 48 Corp.*, No. 10-CV-3635 (LAK)(JCF), 2011 WL 2038973 (S.D.N.Y. May

---

[1] The Court notes that Plaintiffs' Supplemental Memorandum of Law in Support of Default Judgment asks the Court to award damages in the total amount of $712,424.14, but the Plaintiffs' damage calculation sheets only total $703,212.32. (Docs. No. 71-2 and 73.) This $9,211.82 discrepancy reflects the difference between the Supplemental Memorandum, which asks for $27,831.09 in liquidated damages under the NYLL for Peralta, and Peralta's spreadsheet, which shows that $18,619.22 is owed. The additional $0.05 discrepancy is due to counsel's summation errors on the damage calculation spreadsheets.

24, 2011); *Dong v. CCW Fashion Inc.*, No. 06-CV-4973 (LAP)(DFE), 2009 WL 884680, at *4 (S.D.N.Y. Feb. 19, 2009), *adopted by Dong v. CCW Fashion Inc.*, No. 06-CV-4973 (LAP)(DFE), 2009 WL 884668 (S.D.N.Y. Apr. 1, 2009).  Therefore, the limitations period for each FLSA claim asserted is three years.

### 3.    Relation Back

Federal Rule of Civil Procedure 15(c) governs when an amended pleading "relates back" to the date the original pleading was filed.  Where an amended pleading changes a party, the rule requires, *inter alia*, that "the party to be brought in by amendment . . . knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  FED. R. CIV. P. 15(c)(1)(C).  The Supreme Court clarified in *Krupski v. Costa Crociere*, that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading."  560 U.S. 538, 541 (2010).

Here, the proper corporation, Gourmet, Inc., and its Chief Executive Officer, Zaki, were not named as Defendants until Plaintiffs filed the Amended Complaint on September 19, 2014. (Doc. No. 18.)  Mohsin, Alzandani, and Abdo were not named as Defendants until the Second Amended Complaint was filed on April 9, 2014.  (Doc. No. 76-77.)  Until Plaintiffs properly named Gourmet, Inc. in this action, Defendants could not have known that they were being sued under the FLSA and the NYLL.  Once Gourmet, Inc. was named, however, Defendant Officers Mohsin, Alzandani, and Abdo, were properly put on notice of this action.  Because Defendants should not be held responsible for damages before they received notice, the Court uses the date of the filing of the Amended Complaint on September 19, 2014, for the purposes of calculating

the covered time period under the FLSA and the NYLL. *See Miller's Heirs & Devisees v. McIntyre*, 31 U.S. 61, 64 (1832).

The NYLL six-year statute of limitations reduces the covered employment period to any date after and including September 19, 2008, and the FLSA three-year statute of limitations for willful violations reduces the covered employment period to any date after and including September 19, 2011.

### 4.  Federal and State Labor Laws

#### a.  Unpaid Overtime Wages

Federal and state law require that employers pay employees one and one-half times their regular rate for hours in excess of forty in a given week.  29 U.S.C. § 207(a); 12 N.Y. C.R.R § 146–1.4.  The standard method of calculating overtime pay for salaries employees is to "determine the regular hourly rate of pay by dividing the salary by the number of hours which the salary is intended to compensate; the employee then receives one and one-half times that regular rate of pay for all hours worked in excess of forty per week." *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 528 (S.D.N.Y. 2013) (quoting *Davis v. Abercrombie & Fitch Co.*, 08-CIV-1859 (PKC), 2008 WL 4702840, at *7 (S.D.N.Y. Oct. 23, 2008) (citing 29 C.F.R. § 778.113; *Adams v. Dep't of Juvenile Justice*, 143 F.3d 61, 66-77 (2d Cir. 1998))).  "Unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate," courts understand the weekly salary to cover only the first 40 hours. *Giles v. City of New York*, 41 F. Supp. 2d 308, 317 (S.D.N.Y. 1999).

Where an employee works irregular hours, or fluctuating hours for a fixed weekly wage, the Supreme Court allows overtime to be compensated pursuant to the fluctuating workweek

11

method. *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 580 (1942); *see also Klein v. Torrey Point Group*, 979 F. Supp. 2d 417, 435-36 (S.D.N.Y. 2013)  Under this method, the regular hourly rate is determined by dividing the fixed weekly salary by the number of hours the employee actually works in a particular week.  The employee then receives one-half of his regular rate of pay for all hours worked over forty per week.  *Martinez*, 930 F. Supp. 2d at 528 (citing *Davis*, 2008 WL 4702840, at *7).  Because this method is an exception to the normal rights of the employee, the employer bears the burden of proving that all requirements for applying the fluctuating workweek method are met.  *Martinez*, 930 F. Supp. 2d at 528 (internal citations omitted).  Defendants did not appear or otherwise present any evidence of a contract or other agreement to establish a fluctuating workweek. Accordingly, the hourly rate will be calculated using the premium overtime calculation.

Although Plaintiffs are entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, they may not recover twice.  *See Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13-CV-3061 (JGK), 2014 WL 2624759, at *4 (S.D.N.Y. June 10, 2014) (citing *Jin M. Cao v. Wu Liang Ye Lexington Rest., Inc.*, No. 08-CV-3725 (DC), 2010 WL 4159391, at *3 (S.D.N.Y. Sept. 30, 2010)).  However, "[w]here a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Wicaksono*, 2011 WL 2022644, at *3.

**b.   Liquidated Damages**

Under the FLSA, a plaintiff who is owed minimum or overtime wages may recover an equal amount as liquidated damages.  29 U.S.C. § 216(b).  The NYLL also authorizes liquidated damages where an employer's violations were willful, an allegation that the Court deems

admitted given the default.  As of April 9, 2011, these state damages are set at 100 percent of

unpaid wages.  NYLL § 663(1) (McKinney).  Prior to that date, liquidated damages were set at

twenty-five percent (25%) of unpaid wages.  2009 Sess. Law News of N.Y. Ch. 372 (A. 6963)

(McKinney) (eff. Nov. 24, 2009).

 "The liquidated damages provisions in the FLSA and the NYLL serve different purposes;

this allows a plaintiff to recover under both provisions.  The FLSA's liquidated damages

provision is intended to be compensatory rather than punitive.  The NYLL's liquidated damages

provision is intended to be punitive." *Azkour v. Little Rest Twelve, Inc.*, No. 10-CV-4132

(RJS)(KNF), 2012 WL 402049, at *9 (S.D.N.Y. Feb. 7, 2012), *adopted by Azkour v. Little Rest

Twelve, Inc.*, No. 10-CV-4132 (RJS)(KNF), 2012 WL 1026730 (S.D.N.Y. Mar. 27, 2012)

(internal citations omitted) (citing *Reich v. S. New England Telecommunications Corp.*, 121 F.3d

58, 71 (2d Cir. 1997); *Reilly v. Natwest Markets Grp. Inc.*, 181 F.3d 253, 265 (2d Cir. 1999)).

 c.   **Spread of Hours Violation**

 Under the NYLL, employees are also entitled to receive "spread of hours" compensation.

This requires "one additional hour of pay at the basic minimum hourly rate" for any workday

that lasts longer than ten hours.  12 NYCRR § 146–1.6(a).  "The additional hour of pay is not a

payment for time worked or work performed and need not be included in the regular rate for the

purpose of calculating overtime pay."  12 NYCRR § 146–1.6(c).  If an employee establishes that

each workday lasted in excess of ten hours, she is entitled to a spread of hours premium for each

workday worked at the minimum wage rate.  *See, e.g., Easterly v. Tri-Star Transp. Corp.*, No.

11-CV-6365 (VB), 2015 WL 337565, at *2-3 (S.D.N.Y. Jan. 23, 2015).  Here, the applicable

13

minimum wage rates are $6.55 per hour before July 24, 2008, and $7.25 per hour after and including July 24, 2009.  29 U.S.C.A. § 206.

A majority of courts in this Circuit have held that the NYLL spread of hours provision applies only to employees earning the minimum wage.  *See Li Ping Fu*, 2011 WL 4552436, at *6, *adopted by* 2011 WL 6092309 (collecting cases).  The Court adopts the majority approach in deference to New York State Department of Labor ("DOL") Opinion Letters interpreting New York's spread of hours provision as applying only to employees earning the minimum wage.  *See* N.Y.S. Dep't of Labor 3/16/07 Opinion Letter at 1, File No. RO–07–0009, https://labor.ny.gov/legal/counsel/pdf/Minimum%20Wage%20Orders/RO-07-0009A.pdf (last visited Aug. 14, 2015) ("[O]n any day that an employee works a 'spread of hours' he must be paid at a minimum: the minimum wage for such hours together with an additional hour of pay at the minimum wage. If, however, the employee's regular wages for those hours worked is equal to or greater than this 'spread of hours pay,' no additional wages need be paid"); *see also* N.Y.S. Dep't of Labor 4/12/06 Opinion Letter at 2, File No. RO–06–0027(quoted in *Li Ping Fu*) ("It is important to note that the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage").  Here, Plaintiffs were compensated in excess of the minimum wage plus one additional hour at the minimum wage for each workday exceeding ten hours, and are thus not entitled to spread of hours pay.

### d.    Prejudgment Interest

Plaintiffs seek prejudgment interest on their state claims.  (Doc. No. 77 at 2; Doc. No. 73 at 5.)  Under the NYLL, a plaintiff can recover both liquidated damages and prejudgment interest. *Angamarca*, 2012 WL 3578781, at *9.  "However, where that plaintiff has already received an award of federal liquidated damages, the plaintiff has been compensated for some portion of the delay and is therefore entitled to an award of prejudgment interest only on unpaid wages and spread of hours pay for which liquidated damages pursuant to the FLSA were not assessed." *Id; see, e.g., McLean v. Garage Mgmt. Corp.*, Nos, 10-CV-3950 (DLC), 09-CV-9325 (DLC), 2012 WL 1358739, at *11 (S.D.N .Y. Apr. 19, 2012).  In this case, the period not covered by the FLSA is September 19, 2008, through September 18, 2011.  *See* N.Y. C.P.L.R. §§ 5001, 5004.

Prejudgment interest applies to compensatory damages and does not include liquidated damages. *See McLean v. Garage Mgmt. Corp.,* No. 09-CV-9325 (DLC), 2012 WL 1358739, at *11 (S.D.N.Y. Apr. 19, 2012).  Where unpaid wages "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *see id.*  In lieu of engaging in compound interest analysis, courts in this District have calculated simple prejudgment interest by multiplying the principal by the interest rate by the time period—single intermediate date—up until and including the date judgment is entered. *Castellanos*, 2014 WL 2624759, at *5 (collecting cases).

5.    **Damages in FLSA Cases**

In a FLSA case, plaintiffs' estimations of hours worked are presumed to be correct in the absence of rebuttal or opposition from defendants. *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946) ("[A]n employee has carried out his burden [of production under the FLSA] if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate"); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87–88 (2d Cir. 2003).

Plaintiffs Herrara and Peralta claim a different number of hours worked per week in their affidavits than they alleged in the Second Amended Complaint ("Complaint"). In the Complaint, Herrara alleges that he worked six eleven-hour days per week resulting in **sixty-six** hour workweeks. (Doc. No. 77.) In his affidavit, Herrara claims that from July 1, 2010, until October 28, 2012, he worked eleven hours per day, five days per week, and twelve hours per day, one day per week, resulting in **sixty-seven** hour workweeks. (Doc. No. 71-2.) In the Complaint, Peralta alleges that he worked six ten-hour days per week resulting in **sixty hour** workweeks. (Doc. No. 77.) In his affidavit, Peralta claims that from 2002, to October 28, 2012, he worked ten hours per day, five days per week, and twelve hours a day, one day per week, resulting in **sixty-two** hour workweeks. (Doc. No. 71-4.)

16

Federal Rule of Procedure 54 and Due Process require that a default judgment "not differ in kind from, or exceed in amount, what is demanded in the pleadings." *See Lliviganay v. Cipriani, 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009).

> [The theory of this provision] is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action. It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award.

*Integrity Commc'ns Corp. v. Baker*, No. 10-CV-3238 (DAB)(RLE), 2013 WL 4830948, at *3 (S.D.N.Y. Sept. 10, 2013) (quoting *Silge v. Merz*, 510 F.3d 157, 159 (2d Cir. 2007)). Thus, for the purposes of calculating Plaintiffs' damages, where the hours claimed in Plaintiffs' affidavits exceed those pleaded in the Complaint, the Court will rely on the Complaint.

## B. Damages and Interest Calculations

### 1. Herrara

#### a. Unpaid Overtime Wages

Because the statute of limitations under the NYLL is more favorable to Plaintiffs, the Court will calculate Herrara's unpaid overtime damages according to the NYLL rather than the FLSA.

The Court calculates Herrara's hourly rate by dividing his weekly salary, $750, by 40 hours, resulting in a "regular rate" of $18.75. Herrara seeks overtime wages for hours worked between June 24, 2007, and October 28, 2012. (Doc. No. 71-3.) Of these hours, only those worked from September 19, 2008, to October 28, 2012, are compensable under the NYLL. This time period includes 214.3 weeks.

The Court calculates Herrara's overtime wages as follows. The overtime rate is 1.5 times the regular rate, or $28.13. This is multiplied by the number of overtime hours per week, 26, and by the number of weeks in the covered pay period, 214.3. Herrara is thus owed **$156,734.73** in overtime wages.

### b.      Liquidated Damages

Under the FLSA, Herrara is entitled to liquidated damages equal to his unpaid overtime wages during the covered employment period, from September 19, 2011, to October 28, 2012 (57.86 weeks). The FLSA liquidated damages equal **$42,317.65.**

Under the NYLL, for the September 19, 2008 through April 8, 2011 employment period (133 weeks), Herrara is entitled to liquidated damages equal to 25% of his unpaid overtime wages, or $24,318.39.  For the April 9, 2011 through October 28, 2012 employment period (81.14 weeks), Herrara is entitled to liquidated damages equal to his unpaid overtime wages, or $59,344.17. Thus, Herrara is owed a total of **$83,662.56** in NYLL liquidated damages.

### c.      Prejudgment Interest

Herrara is entitled to prejudgment interest at a rate of nine percent per year on overtime wages incurred from September 19, 2008, through September 18, 2011 (156.3 weeks). The overtime wages for this period are $114,314.69. Using the reasonable intermediate date of March 20, 2010, to January 29, 2014, the date default judgment was entered, Herrara should be awarded **$39,712.92** in prejudgment interest.

### d.      Total Award

The Court therefore recommends that Herrara be awarded **$322,427.86** in overtime wages, liquidated damages, and prejudgment interest.

2.      **Peralta**

a.      **Unpaid Overtime Wages**

Because the statute of limitations under the NYLL is more favorable to Plaintiffs, the Court calculates Peralta's unpaid overtime damages according to the NYLL rather than the FLSA.

Peralta's hourly rate of $14.38 is obtained by dividing his weekly salary, $575, by 40 hours. The overtime rate is thus $21.57. Peralta seeks overtime wages for hours worked between June 24, 2007, and October 28, 2012. (Doc. No. 71-5.) Of these hours, only those worked from September 19, 2008, to October 28, 2012, are compensable under the NYLL. Using the same methodology as with Herrara, Peralta's overtime wages owed ($21.57 x 20 hours per week x 214.3 weeks) are **$92,449.02.**

b.      **Liquidated Damages**

Under FLSA, Peralta is entitled to liquidated damages equal to his unpaid overtime wages during the covered employment period, from September 19, 2011, to October 28, 2012 (57.86 weeks). Using the same methodology as with Herrara, the Court determines that Peralta's FLSA liquidated damages are **$24,960.80.**

Under the NYLL, for the September 19, 2008 through April 8, 2011 employment period (133 weeks), Peralta is entitled to liquidated damages equal to 25% of his unpaid overtime wages, or $14,344.05. For the April 9, 2011 through October 28, 2012 employment period (81.14 weeks), Peralta is entitled to liquidated damages equal to his unpaid overtime wages, or $35,003.80. Thus, Peralta is owed a total of **$49,347.85** in NYLL liquidated damages.

19

### c.     Prejudgment Interest

Peralta is entitled to prejudgment interest at a rate of nine percent per year on overtime wages incurred from September 19, 2008, through September 18, 2011 (156.3 weeks).  The Court calculates Peralta's overtime wages for this period as $67,427.82.  Using the reasonable intermediate date of March 20, 2010, to January 29, 2014, the date default judgment was entered, Peralta should be awarded **$23,424.42** in prejudgment interest.

### d.     Total Award

The Court therefore recommends that Peralta be awarded **$190,182.09** in overtime wages, liquidated damages, and prejudgment interest.

## 3.     Xochimitl

### a.     Unpaid Overtime Wages

Because the statute of limitations under the NYLL is more favorable to Plaintiffs, the Court calculates Xochimitl's unpaid overtime damages according to the NYLL rather than the FLSA.

Xochimitl was paid $600 per week until October 1, 2008.  (Doc. No. 71-6.)  From October 2, 2008, to October 1, 2010, he was paid $630 per week.  (*Id.*)  From October 2, 2010, to October 28, 2012, he was paid $660 per week.  (*Id.*)  The Court calculates Xochimitl's hourly rates for these periods by dividing his weekly salary by 40 hours, resulting in "regular rates" of $15.00, $15.75, and $16.50, respectively.  The overtime rates are therefore $22.50, $23.63, and $24.75, respectively.

Xochimitl seeks overtime wages for hours worked between June 24, 2007, and October 28, 2012.  (Doc. No. 71-3.)  Of these hours, only those worked from September 19, 2008, to

October 28, 2012, are compensable under the NYLL.  Xochimitl's overtime wages owed for September 19, 2008, through October 1, 2008 ($22.50 x 14 hours per week x 1.71 weeks), are $538.65; for October 2, 2008, through October 1, 2010 ($23.63 x 14 hours per week x 104.1 weeks), are $34,438.36; and for October 2, 2010, through October 28, 2012 ($24.75 x 14 hours per week x 108.1 weeks), are $37,456.65.  Xochimitl's total overtime wages are **$72,433.66.**

### b.    Liquidated Damages

Under the FLSA, Xochimitl is entitled to liquidated damages equal to his unpaid overtime wages during the covered employment period from September 19, 2011, to October 28, 2012 (57.86 weeks).  The Court calculates Xochimitl's FLSA liquidated damages as **$20,048.49.**

Under the NYLL, for the September 19, 2008 through April 8, 2011 employment period (133 weeks), Xochimitl is entitled to liquidated damages equal to 25% of his unpaid overtime wages, or $134.66.  For the April 9, 2011 through October 28, 2012 employment period (81.14 weeks), Xochimitl is entitled to liquidated damages equal to his unpaid overtime wages, or $28,115.01.  Thus, Xochimitl is owed a total of **$39,051.35** in NYLL liquidated damages.

### c.    Prejudgment Interest

Xochimitl is entitled to prejudgment interest at a rate of nine percent per year on overtime wages incurred from September 19, 2008, through September 18, 2011 (156.3 weeks).  Using the same methodology as above, the Court calculates overtime wages for September 19, 2008, through October 1, 2008, as $538.65; for October 2, 2008, through October 1, 2010, as $34,438.37; and for October 2, 2010, through September 18, 2011, as $17,373.51.  In sum, Xochimitl should be awarded prejudgment interest on a total of $52,350.53 in overtime wages.

Using the reasonable intermediate date of March 20, 2010, the Court calculates simple interest on the $52,350.53 for the time period between March 20, 2010, and January 29, 2014, the date default judgment was entered. Xochimitl should be awarded **$18,186.57** in prejudgment interest.

### d.   Total Award

The Court therefore recommends that Xochimitl be awarded **$149,720.07** in overtime wages, liquidated damages, and prejudgment interest.

## C.   Attorneys' Fees

Plaintiffs seek a total of $44,036.13 in attorneys' fees and costs: $22,473.75[2] in fees, $45 in paralegal fees, and $1,026.57 in expenses incurred by counsel at Rankin &Taylor; and $20,475 in fees and $15.81 in expenses incurred by solo practitioner Scott Korenbaum. (Doc. No. 73; Doc. No. 71-9; Doc. No. 72.)

In determining the appropriate amount of attorneys' fees to award, the Court must calculate the "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours worked. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493 F.3d 110, 117-18 (2d Cir. 2007), *amended on other grounds*, 522 F.3d 182 (2d Cir. 2008). A "reasonable hourly rate is the rate a paying client would be willing to pay." *McDaniel v. County of Schnectady*, 595 F.3d 411, 414 (2d Cir. 2010). The factors relevant to this determination include: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment due to acceptance of the case; (5) the attorney's customary hourly

---

[2] The Court notes that counsel erred in stating the fees he incurred, reporting that 69.15 hours at an hourly rate of $325 totals $22,517.75. (Doc. No. 71 at 7.)

rate; (6) whether the fee is fixed or contingent (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Arbor Hill*, 493 F.3d at 114 n.3 (internal quotation marks omitted).  Furthermore, this Circuit has affirmed the "forum rule," whereby a district court will award fees at the going rate in the district in which the court sits. *Simmons*, 575 F.3d at 174.  The burden is on the party seeking attorneys' fees to submit sufficient evidence to support the hours worked and the rates claimed. *See Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).

In the Second Circuit, a party seeking an award of attorneys' fees must support its application by submitting time records that detail "for each attorney, the date, hours expended, and the nature of the work done." *N.Y. State Assoc. for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983).  When determining the reasonableness of the hours expended by counsel, the court considers "the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) (citations omitted).  Moreover, the Court should reduce the lodestar calculation by any amount of time it deems unreasonable. *See Quarantino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

In determining whether the hours claimed by counsel were "reasonably expended," the court must evaluate "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Hensley*, 461 U.S. at 433.  It is within this Court's discretion to determine whether the work of an additional attorney is reasonable when a firm

23

bills for the work of multiple attorneys on the same project. *Luciano*, 109 F.3d at 111 (approving district court's reduction of compensable hours for second trial counsel where district court found that second counsel had questioned one minor witness and otherwise had not participated meaningfully at trial).

1. **Counsel's Hourly Rates**

Plaintiffs request an award of fees based on the following hourly rates:

| David Rankin | 9 Years of Experience | $325 |
|---|---|---|
| Scott Korenbaum | Solo Practitioner, 27 years of Experience | $450 |

(Doc. No. 71; Doc. No. 72.)  These rates are reasonable in light of the respective prominence of counsel's practices as well as the attorneys' respective credentials and years of experience. (*Id.*) In determining whether a fee is reasonable, "the court may [also] consider rates approved in prior cases and the court's own knowledge of reasonable rates in the district." *Galeana v. Lemongrass on Broadway Corp.*, No. 10-CV-7270 (GBD) (MHD), 2014 WL 1364493, at *13 (S.D.N.Y. Apr. 4, 2014) (*citing Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)).  The rates charged by Plaintiffs' counsel at Rankin & Taylor are within the ranges charged by comparable firms and are in line with rates that have been approved and awarded in this District.[3]

---

[3] *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, No. 10-CV-1853(PGG), 2011 WL 1002439, at *5-6 (S.D.N.Y. Mar. 16, 2011) (approving rate of $761 per hour for partner at Orrick, Herrington & Sutcliffe LLP with 35 years of experience); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs .Ltd.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (approving rates of $735 per hour for partner with over 30 years of experience and $445 per hour for an associate at Bingham McCutchen LLP ); *Therapy Prods., Inc. v. Bissoon*, No. 07-CV-8696 (DLC)(THK), 2010 WL 2404317 at *5 (S.D.N.Y. Mar. 31, 2010) (approving rates of $430 per hour for fourth-year associate and $295 per hour for second-year associate at Fish & Richardson P.C. as "commensurate with the rates charged by attorneys in New York"); *LV v. New York City Dept. of Educ.*, 700 F. Supp. 2d 510, 520 (S.D.N.Y. 2010) (approving rate of $225-300 per hour for first, second, and third-year associates at Milbank, Tweed, Hadley & McCloy LLP).

Because an attorney's status as a solo practitioner is not grounds for a reduction in the reasonable hourly rate, the Court looks to rates charged by attorneys with comparable years of experience in the New York City market to determine whether Korenbaum's requested rate is reasonable. *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 98 n.6 (2d Cir. 2006). The Court may further rely on its own knowledge of private firm hourly rates in the community and is not restricted to the hourly rate data submitted into evidence. *Miele v. New York State Teamsters Conference Pension & Ret. Fund*, 831 F.2d 407, 409 (2d Cir. 1987). Korenbaum's rate is reasonable in light of his twenty-seven years of experience and fourteen years of experience in civil rights litigation. (Doc. No. 72 at 3.) Furthermore, his rate is in line with rates that have been approved and awarded in this District. *See Handschu v. Special Servs. Div.*, No. 71-CV-2203 (CSH), 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) (finding hourly rate of $400 reasonable compensation for five class counsel with approximately thirty years' experience). The Court finds that Korenbaum's hourly rate of $450 is reasonable.

## 2.    Hours Expended by Counsel

Plaintiffs' counsel requests an award of fees based on records indicating that a total of 115.1 hours of attorney and paralegal time were spent litigating this case until default judgment was entered: 69.6 hours by counsel and staff at Rankin & Taylor, and 45.5 hours by solo practitioner Scott Korenbaum. (Doc. No. 71-72.)

"Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). If the court

determines that the number of hours expended is excessive, redundant, or otherwise unnecessary, the court may make reductions to individual entries, or elect to account for such over-billing in an across-the-board percentage deduction. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 117 (2d Cir. 1997) (citation omitted). In calculating the number of reasonable hours, the court looks to "its own familiarity with the case and its experience with the case as well as to the evidentiary submissions and arguments of the parties." *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992).

A review of counsel's contemporaneous billing records indicates that the hours Plaintiffs' counsel expended in reaching default judgment were excessive. This fee application stems from motions for default judgment in a case concerning straightforward FLSA allegations. Although Defendants' conduct resulted in legal research, investigation, and multiple filings, the Court finds that a significant portion of counsel's time expenditure was duplicative and unnecessary.

The crux of an attorney's role in a FLSA or NYLL law case is to calculate the damages his or her client is owed. Here, counsel's submissions reflect a lack of thoroughness, inconsistency in the damages requested in different submissions,[4] and mathematical errors.[5] Instead of relying on Plaintiffs' submission as a clear guide for determining the proper damages to award, the Court was required to calculate damages after piecing together information from different sources that counsel should have compiled.

---

[4] For example, the Supplemental Memorandum in Support of Default Judgment asks the Court to award Herrara $334,995.52, including an award of spread of hours pay, whereas the Rankin Declaration asks the Court to award Herrara $322,924.22, excluding a spread of hours claim. This discrepancy is also present with respect to Peralta's damage award request, but not with respect to Xochimitl's award request. The damage calculation charts for all three Plaintiffs include spread of hours claims. (Docs. No. 71, 71-2, 73.)

[5] Counsel did not discover one of his early calculation errors until alerted to chart discrepancies by Judge Furman's Law Clerk in December of 2013 (Doc. No. 71 at 2.) Despite counsel's second opportunity to review his calculations, errors and discrepancies remained in counsel's April 2014 submissions.

Counsel's calculations reflect the faulty assumption that Plaintiffs would be able to recover spread of hours compensation despite receiving weekly salaries in excess of the minimum wage plus a spread of hours premium.  To the extent that counsel was relying on precedent from the minority of courts in this district that have awarded spread of hours pay to non-minimum wage workers, counsel should have addressed the issue in their "Supplemental Memorandum of Law in Support of Default Judgment." (Doc. No. 73 at 3-4.)  Counsel cited no case law on this issue either way.  (*Id.*)

Counsel's calculations reflect the faulty assumption that the statutes of limitations under the FLSA and the NYLL would be applied according to the filing of the original Complaint despite counsel's failure to name (and therefore provide notice to) the proper defendants in this action until the Amended Complaint was filed three months later.  To the extent that counsel believed the Amended Complaint should "relate back" to the original Complaint, they did not argue or otherwise address this point in their submissions.

Counsel's records also reflect a number of hours spent on researching general legal standards, which are not specific to the issues raised in this case.[6]  (Doc. Nos. 71-9.)  Although the Court finds that a fee award is warranted, routine and educational legal research will not be subsidized.  Furthermore, there are numerous entries from Rankin's and Korenbaum's time records that reflect duplicate work on the same filings.  (Doc. No. 71-9; 72.)  An expenditure of $42,993.75 in attorneys' fees to reach default judgment is exorbitant where the default resulted mainly from Defendant's failures to appear and counsel failed to calculate damages properly.

---

[6]  Doc. No. 71-9 at 3 (Entries 12/3/13, 1/12/14). Doc. No. 72 at 12 (Entry 7/8/13), 15 (Entries 10/8/13, 10/9/13), 17 (Entry 12/6/13).

Where an applicant's time is "not reasonably necessary to the outcome," the Court should "reduce the time for which compensation is awarded." *Tucker v. City of New York*, 2010 U.S. Dist. LEXIS 30270, *12-13 (S.D.N.Y. Mar. 9, 2010) (citing *Carey*, 711 F.2d 1136, 1142-43, 1147 (2d Cir. 1983)). The Second Circuit has held that across-the-board percentage reductions are appropriate where a case is overstaffed, "resulting in needless duplication of work and retention of unnecessary personnel." *See Lochren v. County of Suffolk*, 344 Fed. Appx. 706, 709 (2d Cir. 2009). Given the relative simplicity of the underlying dispute and the brief period during which this dispute was ongoing, an across-the-board reduction of forty percent (40%) is fair and reasonable. I recommend that Plaintiffs be awarded fees of **$25,796.25.**

### 3.    Plaintiffs' Requested Costs

Counsel from Rankin incurred $1,026.57 in costs and expenses for translation services, filing fees, and process serving fees. (Doc. No. 71-9 at 5.) Korenbaum incurred $15.81 in expenses for postage. (Doc. No. 72 at 9-20.) Having reviewed the invoices provided, the Court finds that counsel reasonably incurred these expenses.

### IV.  CONCLUSION

For the reasons stated above, I recommend that the Court award Plaintiffs damages and prejudgment interest in the amount of **$662,330.02**, attorneys' fees in the amount of **$25,796.25** and costs in the amount of **$1,042.38**.

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Jesse M.

Furman, 40 Foley, Room 2202, New York, New York 10007, and to the chambers of the

undersigned, 500 Pearl Street, Room 1970, New York, New York 10007.  Failure to file timely

objections shall constitute a waiver of those objections both in the District Court and on later

appeal to the United States Court of Appeals.  *See Thomas v. Arn,* 474 U.S. 140, 150 (1985);

*Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28

U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).


**DATED: February 29, 2016**
**New York, New York**


**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**